[No. 19534.  Department One.  April 14, 1926.]

CLARENCE H. GRAY, *Appellant*, v. E. J. HAASZE *et al.,*
*Respondents.*[1]

[1] PLEDGES (10-1)—ACTION FOR DAMAGES—ADVANCES.  In an action
against a pledgee for the conversion of notes and mortgages,
pledged as security, the pledgee is entitled to recover advances
which were necessary to protect the property from loss under a
first mortgage foreclosure.

[2] SAME (10-1)—ACTION FOR DAMAGES—EVIDENCE — ADMISSIBILITY.
In an action against a pledgee for the conversion of notes and
mortgages, it is not error to exclude evidence of an interloping
deed of a portion of the mortgaged property, made by a party
having no title, and for which defendant was not responsible.

[3] SAME (10-1)—ACTION FOR DAMAGES—EVIDENCE—SUFFICIENCY.  In
an action against a pledgee for the conversion of notes and
mortgages, pledged as security, through trading one equity for
another, no damage is shown where the amount received there-
for was not as great as the amounts due the pledgee.

Appeal from a judgment of the superior court for
Yakima county, Nichoson, J., entered April 25, 1925,
upon findings in favor of the defendants, in an action
for conversion, tried to the court.  Affirmed.

*Chas. M. Fouts* and *George B. Holden,* for appellant.
*Stephen E. Chaffee,* for respondents.

ASKREN, J.—On March 31, 1919, the plaintiff was the
owner of a second mortgage upon a ranch in Yakima
county, Washington, which he had theretofore sold to
one Laflin, and on which there was due $4,000.  This
mortgage was secured by two notes of $2,000 each, one
due December 1, 1920, and the other December 1, 1921.

On that day plaintiff borrowed from E. J. Haasze,
one of the defendants, $1,500, and gave his note for
the same amount to J. R. Haasze, Trustee, due January
1, 1921, and as security the two notes aggregating

[1]Reported in 245 Pac. 24.

$4,000 above referred to. The notes secured by the second mortgage were not paid when due, and the pledgee, Haasze, was requested to take action to secure their payment. Thereafter the pledgee released the second mortgage in exchange for an equity in another piece of property in his own name. Suit was brought by plaintiff alleging that the pledgee had converted the notes and the second mortgage, and asked for judgment for their full amounts.

The defendants, by their answer, admitted that the second mortgage and the notes for $4,000 had been transferred as security for the payment of the $1,500 borrowed in March, 1919; alleged that, in the fall of 1920, Laflin was insolvent, and became unable to pay the notes in question, or to make the payments which were due on the amortization of a first mortgage upon the property involved in favor of the Federal Land Bank of Spokane, the mortgage being in the sum of $5,900; that defendants advised the plaintiff that Laflin was unable to make any of the payments due on his indebtedness, but that he was willing, and had offered in lieu of foreclosure, to give a quit claim deed to J. R. Haasze; that it was agreed between all of the parties that Haasze should take a deed to the premises, and that the defendants should operate the ranch and attempt to sell the same for the purpose of satisfying the indebtedness due and owing by the plaintiff to the defendants, and that whatever sums defendants might advance, in order to protect their security on account of the mortgage, and for taxes, assessments and improvements, and other charges, should be secured by an assignment of the mortgage which plaintiff had pledged to the defendant Haasze; that, with plaintiff's knowledge and consent, a deed was accepted from Laflin in December, 1921, and the plaintiff by a power of attorney appointed the defendant E. J. Haasze as

his attorney-in-fact to handle the premises, with full power and authority to do everything necessary in connection with the real estate; that the defendant Haasze thereafter took charge of the real estate and managed the same; that in the winter of 1921 some twelve acres of orchard on the premises were destroyed by freezing, and because of the insufficiency of water during the year 1921 no crops were produced; that the defendant Haasze under his power of attorney endeavored to sell the premises, but was unable to do so, and managed the premises, but the returns for the crop of 1922 was only $508.56, and for the year 1923 $360. That, pursuant to the understanding between plaintiff and defendant Haasze, it became necessary to make advances to pay money due upon the first mortgage, and for assessments, taxes, and improvements, which, together with the principal and accrued interest on the $1,500 note amounted to $3,489.28, a statement of which amount was furnished in the spring of 1923, and no objection was made thereto; that credits were given for the returns from the 1922 crop; that thereafter further payments were required to be made, so that there was due and unpaid on March 1, 1924, a total of $5,250.60; that prior thereto the plaintiff had requested the defendants to take title to the premises and accept the same in payment of the indebtedness due and owing to them, and that at no time was the offer withdrawn; that they believed that it was the plaintiff's desire that they should accept the title to the premises in satisfaction of the obligations due, and therefore in November, 1923, they accepted the offer and made an exchange agreement with one Emiline Conat, also named as a defendant, whereby they traded the equity in the premises subject to the mortgage to the Federal Land Bank, for an equity in some real estate, which was also heavily mortgaged; that the

value of the equity in such premises, at the time the exchange was made, was much less than the amount due the defendants, $5,250.60.

The defendants also set up that they were willing to reinstate the Laflin mortgage for $4,000, leaving the same in full force and effect, upon condition that the lien of the defendant E. J. Haasze for the $1,500 note, together with interest and advances should also be reinstated, and in full force and effect; that Laflin and his wife had given their written consent to such reinstatement, and that the defendant Emiline Conat had given her written consent that the mortgage be reinstated.

For reply, the plaintiff denied that the second mortgage for $4,000 could be reinstated to give it full force and effect, and alleged that the defendants had elected to convert the $4,000 mortgage to their own use, and were therefore estopped to deny the receipt of the amount due plaintiff.

Upon the trial of the action, there was abundant evidence to show that, at the time the pledged mortgage became due, Laflin was unable to pay; that, in lieu of foreclosure a deed was taken from him in favor of Haasze, with the full knowledge and consent of the plaintiff; that the property was thereafter operated by E. J. Haasze upon behalf of plaintiff, and under the power of attorney given by him; that the payments made on the first mortgage to the Federal Land Bank, together with taxes, assessments and improvements were absolutely necessary for the protection of the interest of plaintiff in the property; that plaintiff knew at all times of the conditions under which the property was being operated, and of the amounts which had to be paid thereon.

The trial court evidently adopted the view of the defendants set forth in their second affirmative de-

fense, in which they offered to reinstate the $4,000 mortgage, provided their own mortgage of $1,500 could be reinstated, which would have the effect of placing the parties in *statu quo*.

Plaintiff appeals from this judgment of the court, insisting that the evidence is not sufficient to show that plaintiff was advised of the different transactions, or that they were performed with his consent. This was a question of fact, and the evidence we have detailed clearly preponderates in favor of the trial court's findings thereon.

It may be true, that there was no showing that, at the time the defendants traded the equity in the land covered by the second mortgage to Emiline Conat, the plaintiff was notified of it, or that he had been notified that his previous offer to trade his equity for a release of his own indebtedness had been accepted; but we think this is immaterial. If the defendants were mistaken in believing that they had the right to accept the offer, when the matter was questioned by plaintiff, they offered to place all the parties in *statu quo*, and this the court by its decree permitted to be done.

[1] Appellant makes some contention that he should not be held for the payment made upon the first mortgage due the Federal Land Bank, and other advances made, but we know of no rule of law that prevents a pledgee, who makes advances for the protection of the property of his pledgor, from recovering the advances so made with interest thereon. Indeed, a failure under certain circumstances to do so may cause him to beheld liable therefor.

The rule is stated in 31 Cyc. 826:

"The pledgee has a lien on the property for any expenses, including the attorney's fees, reasonably incurred by him in keeping and caring for the property pledged, protecting it against liens, taxes, and assess-

ments, or otherwise protecting the pledgor's rights, in making sale for the enforcement of the pledge, in collecting choses in action, and other expenses incurred in rendering the pledged property available for the payment of his debt, although not for any expenses incurred by reason of his own wrongful act.''

[2] It is contended that the court erred in not permitting the introduction of a deed upon behalf of appellant. This was a deed dated November 17, 1920, from one Fluger to Charles M. Christy, of a portion of the property covered by the second mortgage here in question. But there is nothing in the record anywhere to indicate that Fluger ever had any title to this property, and from a colloquy in the record between appellant's counsel and the court, it clearly appears that this deed was in error in describing any of the property covered by this litigation, and was merely an interloping deed. It seems to be the view of appellant, that an action to quiet title might become necessary to remove this interloping deed, and therefore appellant could not be placed in *statu quo,* since the deed was placed of record at a time subsequent to the turning of the mortgage over to Haasze. The trial court was of the opinion that no act of the respondents in any wise contributed to the causing of this deed to be placed of record, and that the situation would not have been different, if the mortgage had never been turned over to the respondent Haasze. We find no error in this regard.

[3] There was also sufficient evidence to show that, at the time the equity in the Laflin ranch was traded for the equity in the Conat ranch the amount received therefor was not in any sense as great as the amounts due upon the $1,500 mortgage, and that no damage was shown, even if there were a conversion. *Fisher v. Coy*

*Valve Co., ante* p. 55, 244 Pac. 125, 247 Pac. 966; *Creegan v. Thompson,* 136 Wash. 606, 241 Pac. 10.

We find no error in the record and the judgment is affirmed.

TOLMAN, C. J., HOLCOMB, FULLERTON, and PARKER, JJ., concur.